All right. Again, in this one we have another complicated appeal and I'm going to let Judge Farris actually ask about the order of argument. Judge Farris, I'm surprising you. All right. So we have Mr. Fikrou has his full 15 minutes because he's the only appellant. We have four appellees. Have you agreed amongst you who will take how much time and what order you will go in? Yes, Your Honor, we have. Okay, go ahead, please. Would you tell us what that is? Sure, Your Honor. I will be taking the first six minutes of oral argument. And then after that, Mr. Darren Hammond will be taking the next three minutes. Mr. Ramir Hernandez will be taking the next three minutes after that. And Ms. Karen Rohenbaugh, and I apologize if I butchered her last name, will be taking the remaining three minutes of our time. Thank you very much for that. All right. Thank you, Judge Farris. Mr. Fikrou, do you wish to reserve any time for rebuttal? Yes, Your Honor. Good afternoon to you. Yes, I would like to reserve about six minutes for rebuttal. Okay. All right. Then we will endeavor to keep track of that, but we can't promise you, again, the burden issuers to do it. And I will say to the appellees, I'm definitely not going to try and keep you to your assigned time slot. So it's all on you. So with that, Mr. Fikrou, you may commence. May I please the court? My name is Getacho Fikrou, and I am the plaintiff and the appellant. And I believe that the entire case is fully briefed for the record. And I believe that there are about three main issues that I would like to address to the court, if the court does not have any questions for me. I have one kind of technical question I would like to ask, if that's a very good time for that. Go ahead. You said that you submitted your motion for reconsideration to the court on a certain date, which has a received stamp on it, but it wasn't actually docketed for about three weeks after that in your briefing. You said you were barred from the clerk's office during that period. Can you tell us what you mean by that, being barred from the clerk's office? Yes, Your Honor. I was not allowed to come into the court. I was not allowed to even present, to be present in the court at that time. Was there a court order providing for that? Or who barred you from coming to the court? I stated in my brief that, well, basically the clerk, let's put it this way. The clerk, when I went into the court, she said, you were barred. You cannot file any document. And she said that she will submit the document to the court. And then I waited another 20 days or maybe 15 days. And then I went back with additional document. And then I was told, now we can file your document. Okay. I understand. Thank you. That answers my question. Please go ahead. Basically, the first issue is in reference to my residence property. I believe I was removed from my residence property by the appellee, the Bank of New York, for a court order that was issued by the Henderson Judicial Court. And I believe that the same court has issued a remittitor after I filed an appeal and that the remittitor was issued before the matter came for the appeal. The second issue is regarding the Cortina property. Basically, the Cortina property was transferred to a third party by the Appellee America First Credit Union. And I believe that it was fraudulently transferred to a third party, despite the fact that I requested to make the payment on the first loan, because the property was foreclosed. And I bought the property at a foreclosure. And I submitted the current market at that time to purchase the property for the current market value. But I was given a higher price to make the payment. And when I disagreed, I went ahead and foreclosed on the property. And I filed my dispute with the federal court. My mistake was that I was pro se when I went to file an LLC at that time. And the court dismissed the case in the federal court. But America First Credit Union went ahead and filed another claim in the district court. Can I stop you there? Because I think where we need to get to is you lost that case in the federal court and you appealed and you lost on appeal. Why is it that the bankruptcy court can effectively reverse that outcome? The federal court on the Cortina property was dismissed and there was no appeal on that one, your honor. Maybe I'm mixing up the problem. I thought there was a Ninth Circuit appeal, wasn't there? Maybe I'm mixing them up. I'm sorry. Yes, a little bit, your honor. The Ninth Circuit appeal was on the property. I see. OK. All right. So the residence property was not even heard when the Henderson court issued a remittance. The remittance was in reference to the violation of the automatic state. So that's a question. So are you arguing that the issuance of the remittance was the state violation? I'll say it again, your honor. Are you arguing that the issuance of the remittance was the state violation? Because you argue about a state violation and I've had trouble figuring out what you're basing that on. Is it the issuance of the remittance? No, your honor. The remittance, it was an order to evict me from the house. That order was actually pre-bankruptcy. The only piece of this that appears to have been pro-bankruptcy was the sort of ministerial piece of the issuance of the remittance. Is there anything else that happened post-bankruptcy? That one is the pre-bankruptcy, your honor. The pre-bankruptcy order was the Henderson order. The judge issued a remittance on that one before the matter went for an appeal. And then I filed for a bankruptcy on May 21st, 2019. And the Bank of New York violated the automatic stay as it's stated in the remittance. The state violation is in reference to the bankruptcy that I filed on May 21st. Right. And the remittance is the order in reference to the eviction of the property prior to the bankruptcy filing. Because the lockout was pre-bankruptcy. The remittance was pre-bankruptcy, yes, your honor. And then after I filed for bankruptcy, the Bank of New York violated the automatic stay. And that's what happened. By doing what? Well, I listed about 20 different actions, your honor. And they evicted me from my property. They sold the property, your honor. Well, they'd already foreclosed, you didn't own the property. No, your honor. It was not foreclosed. The property was never foreclosed. Okay. Okay. The property was never foreclosed. There was an appeal pending. There was an appeal pending. And then the bankruptcy was filed. And then after the bankruptcy was filed, they violated the automatic stay. By definition, I believe the bankruptcy should have stopped any action by the banks. But they didn't stay the violation, your honor. Okay. The third issue is basically regarding the adversary proceeding. And the allegedly modified by somebody. And I presented my briefing in reference to the child support. And the other last issue is in reference to the dismissal that was requested by the trustee. And I believe that the bankruptcy court had made an error in dismissing the case because there was no reason to dismiss the case, your honor. Okay. All right. You're almost at six minutes. Do you want to keep on arguing or do you want to stop here? I want to stop here, your honor. And I would like to use the remaining for the rebuttal, your honor. Okay. Thank you very much. Thank you. All right. I think I have this right, Ms. Hunt. Okay. Good afternoon, your honor. My name is Amanda Hunt. I am a staff attorney for made by the debtor in this case. The issue is very straightforward. The issue is not whether this court or the bankruptcy court can grant the debtor title back. The issue is whether or not the bankruptcy court abuses discretion in denying the debtor's omnibus reconsideration motion. The trustee asserts that it did not. May I stop you before you get to that? I want to ask the same question I asked Mr. Ficru. I don't understand why the clerk's office received his motion, then held it for three weeks before docketing. I didn't see a pre-filing order in the record. Why did that happen? Do you know why that happened? Your honor, to be completely candid, I have no idea how that happened. There was, in the dismissal order, the debtor was barred from refiling a bankruptcy proceeding. So I'm not sure if there was a confusion with the clerk, but ultimately, the motion was filed and heard. This gets to the debtor's, I believe, to the debtor's due process argument, which I will get there, but I do think it may have just been human error in that. Thank you. Thank you. The bankruptcy court identified the correct, the bankruptcy court would have abused its discretion if it had failed to identify equitable staff for a Rule 60E motion that the application of the facts were not supported by the evidence. It is undisputed in this case, the debtor admitted in his underlying motion, as well in his opening brief and on his reply brief, that Rule 60B applies. Therefore, the bankruptcy court did apply the correct legal rules. The question then is whether or not its ruling was supported by the facts on the case, and in this instance, it was. The bankruptcy court went painstakingly through each subsection of Rule 60B and analyzed why the facts did support it, and primarily, it is because the debtor continued to raise the same arguments that he had previously raised in his motions throughout the court. He failed to articulate any new evidence or any intervening law that would have caused the court to reconsider its previous motion. You know, I guess the reason I asked my question about the timing of the filing was if this had been filed when the bankruptcy court actually received this, we'd be talking about a Rule 59 motion, right? We would, Your Honor, and even under that standard, however, the court would have been right to deny that motion, because again, under that, if we're talking Rule 59E, the debtor would have had to show very similar things, such as if the ruling was based on manifest error of law, which he did not argue, whether or not there was new evidence. Again, he continued to argue the same facts that were previously brought to the court. So even under a Rule 59E argument, Your Honor, I believe the bankruptcy court would have reached the same result. And in any event, if we are going to go ahead and look towards the motion to dismiss, I will note that the same abuse of discretion standard applies when a court grants a motion to dismiss. And again, the bankruptcy court did apply the correct legal rule and backed the court dismissal in the debtor's case. So the bankruptcy court cited 11 U.S.C. 137C and found dismissal for bad faith. Under the totality of the circumstances, the bankruptcy court referenced and relied upon Inree Eisen as well as Inree Leavitt. The bankruptcy court analyzed all of the Leavitt factors in making a determination of whether cause for dismissal exists. Two of the factors it found in favor, one factor it found weighing against finding a showing of bad faith, and the last was neutral. Again, the bankruptcy court did heavily weigh the debtor's repeated arguments and his attempt to set aside pre-petition orders in making its determination for whether or not cause for dismissal exists. So the debtor has not raised any argument showing that the bankruptcy court erred in reaching this decision with the facts that are upon it. Lastly, I did want to discuss the debtor's arguments regarding his due process violations or process rights. In the event that the debtor is arguing that the motion to dismiss somehow violated his due process rights, I'm unable to ascertain how that argument could even hold water. He had noticed that the motion to dismiss, he briefed the issue, he had an opportunity to argue at the oral hearing, and also filed a motion for reconsideration on that same thing. And then again, if we are talking on what you and I discussed, Judge Ferris, moments ago, whether the timing of the filing prejudiced him in some way, ultimately he had an opportunity to be heard by the bankruptcy court on the matters before the bankruptcy court, not these outside matters regarding his property, and was heard. Therefore, the trustee asserts that his due process violations were not caused by the bankruptcy court, but by the debtor himself. And so, I'm going to pass my time. All right. Thank you. So, is it Mr. Hammond? Hammond, I think, is next, yeah. Yes. Mr. Hammond. Yes. Thank you, Your Honors. America First Credit Union foreclosed on this property two different times. They foreclosed the second position first, unfortunately. And that's the position that Mr. Fickrew purchased. So, when America First Credit Union realized that it had foreclosed the second lien first, it went ahead and foreclosed its first position in 2013, leaving Mr. Fickrew without any property rights. However, he decided to go to the federal court for the federal district of Nevada and asked the federal court for relief, which he failed on. He still lived in the property. So, America First Credit Union needed to go to state court to evict Mr. Fickrew, which was successful. Eviction occurred. Mr. Fickrew lost in the state court of Nevada in Clark County, and then he appealed that. That appeal was dismissed. Is that the case in which the remitter was issued that he's talked about? Or is that the other case? I think that's the other case. I know there was a remitter in our case, but I think he's talking more about something else in the other situation. I'm asking because I've never heard the word remitter used in that context of an appeal. I don't know Nevada state procedures, so I'm not sure what that means, even. Well, as I understand it, a remitter is simply that the appellate court is saying, now that we've issued our final ruling, we're done with the case, and it's officially going back to the lower court. It's a ministerial act. I'm sorry, Judge Ferris. I was going to say we would call that the mandate in the federal system, I think, and you're making the point that it's a ministerial act. I see. Correct. Thank you. I understand. Yes. So, when in 2019, Mr. Fickrew filed bankruptcy and alleged that America First Credit Union had violated the bankruptcy law. I was very surprised and obviously flabbergasted because this property was no longer property belonging to Mr. Fickrew or his entity, and he no longer had an interest, and the bankruptcy court properly determined that Mr. Fickrew no longer had an interest in that property, and therefore it was not property of the estate. And then there's other grounds that we can go to, forum shopping and other issues, but ultimately, where the bankruptcy court determined that Mr. Fickrew did not have any grounds equitable or legal interest in the property, the ruling by the bankruptcy court that it was not property of the estate is proper, and we think it's fully defensible on appeal, whether we're looking at a motion for reconsideration or the original motion. And so, based upon that, unless your honors have any question, I would cede my time to the next appellee. All right. That's Mr. Hernandez, I believe. Yes, your honor. Thank you. Good morning, your honor. Good afternoon, your honors. May it please the court. I am Ramey Hernandez, and I represent the Bank of New York Mellon. Your honors, rather than go through my introduction, I want to address the appellate issue because I think this seems to be the issue that the court has been focusing on. So, what happened was in April 3rd, 2019, the Justice Court of Henderson issued an eviction order evicting the debtor from the property. Debtor then appealed to the district court on 5-16-2019. That appeal was subsequently dismissed on 7-9-2019. And then the debtor appealed to the Supreme Court. Now, in Nevada, the district court is the court of last jurisdiction for justice court rulings. So, the appeal was dismissed by the Nevada Supreme Court on those grounds, and then they issued their remitted on March 19th, 2020. And the other fact that I want to clarify is that the debtor indicates that we have not foreclosed on the property. That's not true, your honor. You take a look at our supplemental expert of records, pages 72-73. A foreclosure deed was recorded on this property on April 11th, 2014. Debtor here is trying to relitigate issues, your honor, that as was previously indicated, already ruled upon by both the district court and the Ninth Circuit prior to the bankruptcy. And what happened with the district court and the Ninth Circuit was there was an order quieting title in favor of the Bank of New York, which meant that our foreclosure was considered valid. Subsequently, we had to evict him from the property, and that's where we got the justice court order in April of 2019. The debtor did not file for bankruptcy until the following month on May 8th, 2019. So, if you look at the whole timeline, your honor, the property that's at issue here, both the possessory and the legal interests, were not property of the estate at the time of the filing of the bankruptcy. And so, Judge Nakagawa's ruling was correct. Because they were not property of the estate, they were not subject to the automatic stay. And I hope that clarifies that, your honor. I don't have nothing else. It does. The remediatory obviously is post-bankruptcy, but it's ministerial, and I'd focus in on the last thing that I could find in the eviction was the lockout, which was 5-8-8-19. So, it's pre-bankruptcy too. So, as a bankruptcy, the judgment was final, the lockout had been issued. But you had this remediatory, and I couldn't figure out from the record why it was dangling out there, and I think you've answered that question. Of course, your honor. And unless there's any other questions from the panel, I will pass this on to Ms. Rorbaugh. All right. Ms. Rorbaugh. Thank you, your honors. Good afternoon. May it please the court. My name is Karen Rorbaugh. I'm an assistant attorney general with the state of Maryland, and I'm here today on behalf of Montgomery County Office of Child Support. Preliminarily, Montgomery County Office of Child Support is not a party to this appeal, in that the appeal was filed only in the Chapter 13 case. No appeal was filed in the separate adversary proceeding. The Montgomery County Office of Child Support was not a creditor in the Chapter 13. It was not a participant in the Chapter 13. Its only involvement is as a named defendant in the adversary proceeding. Even if the issue were before this court, Mr. Fickrew has waived it by failing to address it in any of his filings. Although he raised it as a question in his brief, he did not address it. In fact, my client's name or the word child support are mentioned only three times in that 27-page brief. There's two paragraphs on pages 10 to 11, and then one paragraph on page 24 to 25. But even if it were on appeal, and even if it hadn't been waived, if you look at the merits of it, the court was well within its discretion in dismissing the adversary proceeding. The court properly recognized that it had to look at the care of her factors, economy, convenience, fairness, at no point, I'm sorry, did you have a question, your honor? No. Okay, sorry, it went green for a second, so I just wanted to make sure. At no point, either in his, either before the bankruptcy court, or in his opening brief, or his reply brief, has Mr. Fickrew ever addressed any of those factors, all of which, as the bankruptcy court laid out, supported the decision to dismiss this adversary proceeding, which was the latest attempt in an eight-year legal battle Mr. Fickrew was waging against my client. And unless you have any questions for me, I would just ask that the decision be affirmed. Thank you. Any questions? No. All right, well, thank you for your arguments. We'll go back to Mr. Fickrew. Mr. Fickrew, you have six minutes and six seconds to respond. And your microphone's muted, I'm afraid. You're muted, Mr. Fickrew, we can't hear you. There. I'm sorry. That's okay. I'm gonna go a little bit slower, your honor. I wanted to make a definition to the remitter, but my understanding is different than what Mr. Hernandez explained it. And I believe also that the filing of the bankruptcy date is incorrect. I believe that the document that I submitted will show that the filing is on May 21st, but it was a different date it was stated. Let me address two questions, your honor. The first one is in reference to America First Credit Union. America First Credit Union foreclosed on their second property. The property had a value of $256,000 and they foreclosed it on their second position. And then I was asked, when I wanted to refinance the property, I was asked to at that time was $136,000. And as you will see in my briefing, your honor, the property was sold to a third party for $156,000 in January of 2018, or somewhere around that number, your honor. So I, let me, let me stop you for a second. Why, why couldn't they properly demand that you pay off the full amount of the mortgage debt, even if that mortgage debt exceeded the value of the property? What's, what's wrong with that? Your honor, the property value at that time was 130. Let's say it's $136,000. Right. But I think you're saying they refused to release their first mortgage unless they were paid in full. Why is that wrong? Even if the property is worth less. Because the market value, I believe it will dictate the price of the property, but not the loan amount, your honor. Because. Well, maybe in a, in a sale, but you're talking about trying to refinance the mortgage, right? But yes, I am the person who bought the property out of foreclosure. Of the second mortgage. Of the second. Of the second. I was the, yes, the second mortgage. And then I went to the bank and said, I want to refinance the property to the market value, which was $136,000 at that time. And they said no. And they said no. Why is that wrongful? I believe it is wrong, your honor, because you cannot sell it more than the market value. That's my understanding. But you're, you're contractually obligated to pay them more than the market value. Why can't they enforce their contract? Your honor, when the property is foreclosed, the market value will dictate the price of the property. As a business matter, maybe it wasn't a good idea. We're asking as a legal matter, why they couldn't enforce your obligation to pay them more than the market value. Because the property value was not that much. The property is worth. Okay. I think we understand what you're trying to say. We understand your position. The market was depressed at that time. So the value of the property was lower. And then the property was foreclosed. And that's what happened. And as to the, to the, to the, my residence property, your honor, the, the Bank of New York has violated the automatic stay, your honor, the minute, the minute the property is, is, is, is in bankruptcy, I believe the bank, the Bank of New York should have stopped any means whatsoever, as I stated in my briefing, your honor. And in my reply, and they should have stopped and I should not been evicted because it's a bankruptcy proceeding and the bankruptcy. You had already been evicted by May 21st. Had you? Yes, I was evicted. Yes, your honor. And the same court that issued the eviction, issued a remitter. And my understanding of a remitter is that they go back to the court to state that the order is invalid or should have been litigated because the, the court had made an error in, in, in issuing that eviction because Mr. Hernandez had allegedly misrepresented the fact that they did not have the document for the court to issue that order. And that's what happened. And then when I filed my appeal, and before the appeal was heard, the court issued a remitter sometime on July of 2019, your honor. If you have no, no question. Yes, I would like to request the courts to reverse the decision that was made in the bankruptcy court. And I thank you for your time, your honor. Thank you. Thank you for your arguments. This matter will be submitted. Thank you. Thank you.
judges: Taylor, Faris, Brand